IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

J. Patrick Nicholson, et al.,                      3:06CV01669

         Plaintiffs,

        v.                                              ORDER

N-Viro International Corporation, et al.,

         Defendants.

This is a securities case by J. Patrick Nicholson, the former CEO of the defendant N-Viro International Corporation (N-Viro). Nicholson is currently the controlling shareholder of co-plaintiff N-Viro Energy Systems (NVES). Plaintiffs claim that N-Viro and the other defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(b) (the Exchange Act), Rule 10(b)(5) promulgated thereunder, common law fraud and breach of fiduciary duty.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, three sets of defendants moved to dismiss plaintiffs' amended complaint for failure to state a claim upon which relief can be granted [Docs. 51, 52, 60]. Plaintiffs have filed a response [Doc. 62] and remaining defendants have filed replies [Docs. 65, 68, 69].[1]

---

[1] Plaintiffs have filed a motion under Fed. R. Civ. P. 41 to dismiss the individual defendants Haslinger, Levin and Logan.

1

The court has jurisdiction pursuant to 27 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa. For the reasons that follow the motions to dismiss shall be granted.

## Background

On July 11, 2006, plaintiffs Nicholson and NVES filed their complaint against defendants N-Viro; Ophir Holdings, Inc. (Ophir); Strategic Asset Management, Inc. (SAMI); Daniel J. Haslinger; Phillip Levin; Terry J. Logan; R. Francis DiPrete; Robert A. Cooke and the Cooke Family Trust. On May 4, 2007, plaintiffs filed their amended complaint [Doc. No. 43].

Cooke controlled Ophir and SAMI, which, in turn, was a principal shareholder of N-Viro until disposing of approximately 350,000 N-Viro shares between September 30, 2003, and February 9, 2004. Cooke also is the controlling party in the Cooke Family Trust, which is the largest shareholder of N-Viro.

DiPrete was a shareholder of N-Viro, a director of N-Viro, the Chairman of the Board and Chief Executive Officer of SAMI, an officer and director of Ophir and a co-trustee of the Cooke Family Trust.

Plaintiffs' securities fraud claim is that defendants, in violation of § 10(b) of the Exchange Act, disseminated false and misleading materials to shareholders and issued false and misleading statements to the public. They contend this was to conceal that the true motive and consequences of a private placement of N-Viro's shares, whereby defendants sought to aggregate ownership and effective operating control of N-Viro under Cooke and his affiliates and associates (the Cooke Group). Plaintiffs also claim that defendants made false and misleading statements to shareholders about the reasons for renegotiations of the purchase price that took place during the private

placement of N-Viro's shares. They contend that this was also done to conceal the defendants' true motive and intentions.

On July 20, 2002, Nicholson stepped down from his executive position with N-Viro, and entered into a consulting agreement with N-Viro, the terms of which are to last through July 20, 2015.

In October, 2002, Nicholson was contacted by a third party who told Nicholson that he had control of stock owned and controlled by Cooke, and who asked Nicholson to sell his stock in N-Viro. Nicholson suspected that Cooke was attempting to obtain control of N-Viro.

On January 30, 2004, N-Viro entered into a Security Units Purchase Agreement with Ophir. As part of this agreement, Ophir agreed to purchase 333,334 "security units" at a per unit price of $2.25 (the Ophir Transaction). Plaintiffs allege that N-Viro did not engage in due diligence of Ophir at the time of the Ophir Transaction because defendants intended to "manipulate formal and effective control of N-Viro to Robert A. Cooke by means of the Security Unit Purchase Agreement." [Am. Compl. ¶ 54].

N-Viro publicly announced the Ophir Transaction on February 6, 2004 and February 9, 2004. According to plaintiffs, the announcements and disclosures contained untrue statements of fact and omitted other material facts. Plaintiffs submit that these February, 2004, disclosures were false by reason of their failure to reflect the defendants' ultimate intent to transfer control of N-Viro to the Cooke Group.

Plaintiffs claim that financial reports for N-Viro (Form 10-QSB) for the periods ending March 31, June 30, and September 30, 2004 were false by reason of their failure to disclose that 1)

Ophir had defaulted on the Security Unit Purchase Agreement and 2) the underlying intent of the Ophir Transaction was to transfer control of N-Viro to the Cooke Group.

Plaintiffs also claim that in May, 2004, N-Viro entered into a Financial Public Relations Agreement with Ophir, under which N-Viro agreed to issue 50,000 shares of its common stock to Ophir. Plaintiffs allege that the purpose of this agreement, which they claim was knowingly concealed by N-Viro in its 10-QSB for the period ending June 30, 2004, was to further secure Cooke in his control of N-Viro.

On June 18, 2004, N-Viro lowered the price to acquire shares under the Security Units Purchase Agreement. Plaintiffs allege this was done at the demand of Ophir and premised on the potential loss of N-Viro's principal asset (a contract with the City of Toledo), and that the purchase price reduction was only for the benefit of Ophir.

In sum, plaintiffs allege that defendants made misleading statements, failed to disclose their intent to lodge control of N-Viro in the Cooke Group, and asserted pretextual justifications for their actions. By virtue of the alleged false statements or omissions, plaintiffs contend that the value of their shares were diminished and that they lost the opportunity to purchase sufficient additional shares of N-Viro to maintain "the status quo of operating control." [Am. Compl. ¶ 90].

## Standard of Review

### A. Motion to Dismiss under Rule 12(b)(6)

As with any motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, LTD*,     U.S.    , 127 S.Ct. 2499, 2509 (2007). When ruling on a Rule 12(b)(6) motion, a court must also construe the complaint in a light most favorable to the nonmoving party. *See, e.g., Bloch v. Ribar*, 156 F.3d 673,

677 (6th Cir. 1998); *Mayer v. Mylod*, 988 F.2d 635, 637 (6th Cir. 1993). While a court may not grant a Rule 12(b)(6) motion based on mere disbelief of the factual allegations contained in a complaint, the court "need not accept as true legal conclusions and unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### B. Pleading Securities Fraud

For a violation of § 10(b) of the Exchange Act, the plaintiff must plead: 1) a misrepresentation or omission of a material fact; 2) made with scienter; 3) in connection with the purchase or sale of a security; 4) relied on by plaintiff; and 5) proximately causing plaintiff's loss. 15 U.S.C. § 78j(b). *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 580 (2005); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 554 (6th Cir. 2001).

The pleadings will be reviewed under the heightened standard for fraud claims prescribed by Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." To satisfy the pleading requirements of Rule 9(b), "a plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s)" upon which he seeks relief. *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984); *see also Coffey v. Foamex L.P.*, 2 F.3d 157, 161 (6th Cir. 1993) (holding that allegations of fraudulent misrepresentations must be specific enough to support an inference that the alleged misrepresentations were knowingly or recklessly made). "Generalized and conclusory allegations of fraudulent conduct do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361.

The Private Securities Litigation Reform Act of 1995 (PSLRA) also requires a heightened pleading standard for securities fraud allegations. Under the PSLRA, any allegation that defendant made a false or misleading statement must:

> specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78u-4(b)(1).

Thus, plaintiffs must provide specific facts in support of the allegations of fraud, and, as well, for allegations of the required state of mind (*i.e.,* facts creating a strong inference of scienter). *Helwig v. Vencor, Inc.*, 251 F.3d 540, 548 (6th Cir. 2001). The PSLRA likewise requires pleading facts that give rise to a strong inference of scienter: "with respect to each act or omission alleged to violate this title . . . [a plaintiff must] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

When considering a Rule 12(b)(6) motion challenging the adequacy of allegations of scienter in a § 10(b) claim, a court, the Supreme Court held in *Tellabs*, must consider the complaint in its entirety and documents incorporated into the complaint by reference to determine "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter." U.S. at , 127 S.Ct. at 2509. In this effort, a court must "take into account plausible opposing inferences." *Id.*

Under *Tellabs*, "the inference of scienter must be more than merely 'reasonable' or 'permissible'–it must be cogent and compelling, thus strong in light of other explanations." *Id.* at 2510. A complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."

*Id.* Accordingly, plaintiffs must establish an inference of scienter that is more plausible and powerful than competing inferences of defendants' state of mind. *Id.*

## Discussion

### 1. Failure to Perfect Service

Federal Rule of Civil Procedure 4(m) reads in part:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

On March 2, 2007, I entered a case management order. In that order, I mandated "Plaintiffs to perfect service as to any parties not previously served by April 16, 2007; if service is not perfected on or before said date, such parties shall be dismissed without prejudice." [Doc. 38].

Service was not effected upon SAMI, Ophir or the Cooke Family Trust by April 16, 2007. According to the docket, plaintiffs did not procure summons directed to SAMI, Ophir or the Cooke Family Trust until May 9, 2007, well after both the expiration of the 120 days set forth in Rule 4(m) and the extended deadline authorized by the Court.

When plaintiffs filed an amended complaint they neither sought nor obtained an extension of time to obtain service on parties not previously served. "A plaintiff cannot extend the service period with respect to an already-named defendant by filing an amended complaint." *Harris v. City of Cleveland*, 7 Fed. Appx. 452, 456 (6th Cir. 2001).

Plaintiffs have not expalined their failure to perfect service in a timely manner, much less articulated grounds or good cause for their failure to serve those defendants. In the Sixth Circuit, absent good cause, dismissal due to lack of service is "mandatory rather than discretionary."

*Moncrief v. Stone*, 961 F.2d 595, 597 (6th Cir. 1992) (citations omitted); *see also Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991).

Given the explicit notice supplied in the case management order, and the Sixth Circuit law in this area, the Cooke Family Trust, SAMI and Ophir are entitled to dismissal for failure to perfect service as to them.

### 2. Statute of Limitations

With the passage of the Sarbanes-Oxley Act of 2002, the statute of limitations for securities fraud under § 10b and Rule 10b-5 is two years "after discovery of the facts constituting the violation." 28 U.S.C. §1658(b)(2).

### a. Storm Warnings

My colleague Judge David A. Katz outlined the application of this statute of limitations in *Greenburg v. Hiner*, 359 F. Supp.2d 675 (N.D. Ohio 2005), *aff'd* 173 Fed.Appx. 3067 (6th Cir. 2006). The "inquiry notice" standard the Sixth Circuit uses for securities fraud actions requires plaintiffs "to begin investigating the possibility of fraud when they bec[o]me aware of suspicious facts, or 'storm warnings.'" *Id*. at 682 (quoting *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

> As stated by Judge Katz:
>
> After the duty to investigate arose, the limitations period began to run when Plaintiffs "should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud." If Plaintiffs conducted no inquiry when their awareness of "storm warnings" gave rise to the duty to investigate, knowledge of the fraud "will be imputed as of the date the duty arose."
>
> Because Plaintiffs brought their suit more than one [applying former statute] year after the allegedly fraudulent statements were made, they must affirmatively plead circumstances indicating why they did not discover the alleged fraud earlier and why the statute of limitations should be tolled. That is to say, Plaintiffs are not permitted

> to "[m]erely bring[ ] suit after the scheme has been laid bare through the efforts of others."
>
> The Sixth Circuit has explained that "'[i]nquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself . . . . The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing . . . the clock begins to tick when a plaintiff senses "storm warnings," not when he hears thunder and sees lightning.'" In other words:
>
>> [T]he plaintiff need not have before him all the facts necessary to establish that a statement was untrue or omitted before the limitations period accrues. Once a plaintiff is in possession of facts sufficient to make him suspicious, or that ought to make him suspicious, he is deemed to be on inquiry notice.

*Id.* at 682-683 (citations omitted).

Paragraph 1 of the complaint states that this case is filed under the Exchange Act and concerns "defendants' failure to comply with and disregard for the applicable laws and regulations controlling the information given to the public in connection with the transactions of a reporting corporation relating to the manipulation of the common stock of the Company, in connection with a private placement thereof." Thus, this case is covered by the PSLRA and the limitations period of Sarbanes-Oxley.

Plaintiffs' filed their original complaint on July 11, 2006. Many of the allegations in the amended complaint predate the filing of the original by two years [*i.e.*, allege conduct occurring before July 11, 2004]. Plaintiffs' allege that Nicholson was concerned that Cooke might attempt to acquire additional shares to control N-Viro as early as October, 2002. The alleged disposition of nearly 350,000 shares of N-Viro stock occurred between late September, 2003, and early February, 2004. The Ophir Transaction was executed in January, 2004, and announced to the public in February, 2004. The lowering of the purchase price to acquire shares was announced publicly on June 18, 2004 in an SEC Form 8(k).

Judge Katz found that when sufficient storm warnings exist, an obligation to investigate is triggered. I find that, to the extent plaintiffs believe they were victimized by securities fraud, clear storm warnings placed them on inquiry notice as early as October, 2002. Consequently, plaintiffs cannot assert claims, including claims based on the sale of SAMI stock, the Ophir Transaction and repricing of the Ophir Transaction, for events occurring between October, 2002, and July 10, 2004, because such claims are time-barred.[2]

### 3. Pleading Fraud Under the PSLRA

Notwithstanding my rulings as to failure to perfect service and the statute of limitations, I will address whether the amended complaint meets the heightened fraud pleading standard, as recently construed in the *Tellabs* case, of the PSLRA. Though plaintiffs contend that the *Tellabs* moderates the statute's heightened pleading, that decision is not helpful to the plaintiffs.

My task is to determine whether "all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, *supra*,    U.S. at    , 127 S.Ct. at 2509 (citations omitted). Taking "into account plausible opposing inferences," *id*., I can overrule defendants' motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 2510.

---

[2] Plaintiffs' do not respond to the defendants' statute of limitation contention; rather plaintiffs ask for discovery. Plaintiffs argue that the securities fraud claims are "fact driven," thus precluding application of the statute of limitations. The facts plaintiffs contend are in issue concern the "private placement of Ophir Holdings, the consequence of such transaction, the awareness of the default in performance, and the related repricing with its pretextual justification." As this is a 12(b)(6) motion, the contentions are evaluated on the basis of what is in the complaint and, accordingly, the plaintiffs' request for discovery is denied.

I conclude that the allegations of plaintiffs' amended complaint, taken collectively, do not satisfy this standard.

### a. The Heightened Pleading Requirements of the PSLRA

With respect to securities fraud claims brought under § 10(b) of the Exchange Act, the PSLRA imposes additional pleading requirements on plaintiffs, which are even more demanding than those imposed by Rule 9(b). The pleading requirements set forth in the PSLRA were prompted by significant evidence of abuse in private lawsuits brought under the Federal securities law. *See In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548-49 (6th Cir. 1999):

> Despite the application of the Rule 9(b) heightened pleading requirements to securities fraud cases, the Supreme Court recognized long ago that 'litigation under Rule 10b-5 presents a danger of vexatiousness different in degree and kind from that which accompanies litigation in general' . . . [and that] groundless claims of securities fraud tended to delay the normal business activities of a corporate defendant while the plaintiff conducted extensive discovery of business documents in the hopes of finding relevant evidence.

*Id.* (citations omitted).

Based on Congress's determination that Rule 9(b) "had not prevented the abuse of the securities laws" by private litigants, Congress imposed rigorous new standards for pleading claims under federal securities law and mandated the dismissal of any claims which failed to meet such standards. *See* Joint Explanatory Statement of the Committee of Conference, H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Ses. 31 (1995), at 31-32; *see also In re Comshare*, *supra*, 183 F.3d at 548 (citing 15 U.S.C. § 78u-4(b)(3) 1998) (if a plaintiff does not meet the pleading requirements PSLRA, a court may, on any defendant's motion, dismiss the complaint).

Plaintiffs must "allege facts that give rise to a strong inference" of knowing or reckless behavior. *In re Comshare*, *supra*, 183 F.3d at 550 (recklessness is a "mental state apart from

negligence and akin to conscious disregard"). Failure to comply with the heightened pleading requirements mandates dismissal of a plaintiffs complaint. 15 U.S.C. $ 78u-4(b)(3)(A).

The Supreme Court clarified and underscored the degree precision required for securities fraud litigation in *Tellabs*:

> Exacting pleading requirements are among the control measures Congress included in the PSLRA. The Act requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention "to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U. S. 185, 194, and n. 12 (1976); see 15 U. S. C. §78u–4(b)(1),(2). This case concerns the latter requirement. As set out in §21D(b)(2) of the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U. S. C. §78u–4(b)(2).

U.S. at    , 127 S.Ct. at 2504.

The precise issue framed by the Court in *Tellabs* is whether a very strict pleading requirement adopted by the Sixth Circuit, *Fidel v. Farley*, 392 F.3d 220 (6th Cir. 2004), or a more relaxed inferential pleading requirement enunciated by the Seventh Circuit, *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588 (7th Cir. 2006), applies to the scienter requirement in a securities fraud case. Rejecting the Seventh Circuit's standard, the Court held:

> in determining whether the pleaded facts give rise to a "strong" inference of scienter, the court must take into account plausible opposing inferences. The Seventh Circuit expressly declined to engage in such a comparative inquiry. . . . But in §21D(b)(2), Congress did not merely require plaintiffs to "provide a factual basis for [their] scienter allegations," *ibid.* (quoting *In re Cerner Corp. Securities Litigation*, 425 F. 3d 1079, 1084, 1085 (8th Cir. 2005)), *i.e.*, to allege facts from which an inference of scienter rationally *could* be drawn. Instead, Congress required plaintiffs to plead with particularity facts that give rise to a "strong"—*i.e.*, a powerful or cogent—inference.

*Tellabs, supra,*    U.S. at   , 127 S.Ct. at 2509-10.

### b. Failure to be Pleaded with the Particularity Required by the PSLRA

12

The PSLRA requires that securities fraud plaintiffs specify "each statement alleged to have been misleading," and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(l). Under the express terms of the PSLRA and Supreme Court precedent, this pleading requirement is not satisfied by simply asserting that a company's public filings contain false and misleading statements, whether quoted or not. Rather, a plaintiff must identify the exact statements within each public filing that the plaintiff contends are false and misleading, the identity of the maker of each such statement, the date on which the statement was made, and the reasons the statement was false. *See id.*; *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F.Supp.2d 873, 904 (N.D. Ohio 2006) ("It is Plaintiffs' burden to plead fraud on a statement-by-statement basis, and they may not evade that requirement by requiring the Court to try to match the allegedly fraudulent statements to allegations of wrongdoing that are scattered throughout . . . [the] Complaint."); *In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp.2d 688, 742 (S.D. Ohio 2006) (holding that to plead securities fraud under the PSLRA, a plaintiff must identify the "exact statements or content [of press releases or SEC filings that] Plaintiffs allege were false and misleading, the identity of the speakers, the date on which the statements were made, and the reasons the statements were false").

Plaintiffs' amended complaint is deficient under this standard. Plaintiffs do not identify specific statements contained within SEC filings that they claim are false and misleading. Their complaint fails to comply with the PSLRA, which requires plaintiffs to plead fraud on a statement-by-statement basis and to identify specifically each fraudulent statement that forms the basis of their action. *See In re Goodyear Tire & Rubber Co. Sec. Litig.*, *supra*, 436 F.Supp.2d at 904; *In re Empyrean Bioscience, Inc. Sec. Litig.*, 255 F.Supp.2d 751, 758 (N.D. Ohio 2003) ("On its face, the

PSLRA requires a plaintiff to set forth each fraudulent statement as well as the reasons why the statement is fraudulent.").

Plaintiffs contend that defendants intended and/or conspired to consolidate ownership in the Cooke Group. Plaintiffs, without alleging requisite underlying facts, contend that defendants wanted an outcome of aggregation of shares with Cooke. PSLRA and Rule 9(b) require such allegations to be set forth with particularity.

The plaintiffs' second major contention is that defendants issued false or misleading statements concerning the acquisition of shares under the private placement of N-Viro's shares. Plaintiffs have not, however, provided facts demonstrating that statements were untrue in any filings or statements. They make only minimal effort to show who made the allegedly false statements and how the statements were false.

### c. Failure to Plead Scienter Under the PSLRA and Failure to Allege Any Actionable Omissions

When pleading scienter plaintiffs have the burden of pleading specific facts which establish a strong inference that the defendants acted at least recklessly, meaning that "their states of mind were reflected in highly unreasonable conduct constituting an extreme departure from the standards of ordinary care so obvious that any reasonable person would have known of it." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 684 (6th Cir. 2004).

While plaintiffs have alleged that defendants desired to consolidate ownership in Cooke's hands, "the bare pleading of motive and opportunity does not, standing alone, constitute the pleading of a strong inference of scienter." *In re Comshare*, *supra*, 183 F.3d at 551. Plaintiffs' conclusory and unsupported charges of securities fraud, without the pleading of any specific underlying facts to support these claims, is fatal to plaintiffs' claims.

14

In particular, the amended complaint fails to: 1) plead fraud on a statement-by-statement basis as required by 15 U.S.C. ¶ 78- 4(b)(l); 2) plead the factual allegations that would give rise to the "strong inference" of scienter required by the PSLRA to plead securities fraud under § 10(b) of the Exchange Act; 3) link any specific misrepresentations made by defendants with facts demonstrating that defendants possessed the required state of mind in making such misrepresentations; and 4) allege that statements by the defendants were actually rendered false by the alleged omissions.

Plaintiffs' amended complaint relies mainly on alleged omissions in connection with the Ophir Transaction and certain public filings related thereto. They contend that these omissions violated Rule 10(b)(5), which prohibits omitting "a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5. To be actionable under Rule 10(b)(5), the alleged material omissions must render an existing public statement false or misleading. *See id.*; *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 674 n.20 (6th Cir. 2005) (stating that violations occur under § 10(b) of the Exchange Act "whenever a statement is false or a material omission makes the statements which are made misleading").

In the present case, plaintiffs allege that defendants failed to disclose material facts relating to the true motive and consequences of the Ophir Transaction. Plaintiffs also allege that defendants failed to disclose that the Ophir Transaction was intended to dilute the common stock of N-Viro and put Cooke in operating control of the company.

In making these conclusory allegations, plaintiffs fail to allege, as required under § 10(b) of the Exchange Act, that omission of this information rendered any specific statements in the

15

defendants' SEC filings false. *See* 17 C.F.R. § 240.10b-5. The plaintiffs consequently have not established an inference of scienter that is more plausible and powerful than competing inferences of defendants' state of mind. Plaintiffs' amended complaint only makes conclusory allegations that defendants diluted the plaintiffs' interests in N-Viro in an attempt to consolidate ownership with the Cooke Group. Without providing the requisite basis for such an allegation, plaintiffs have failed to satisfy the strict pleading requirements of the PSLRA. Accordingly, N-Viro, Cooke and DiPrete are entitled to dismissal.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT the defendants' motions to dismiss [Docs. 51, 52, 60] be, and the same are hereby granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge